### F. M. HENRY v. W. L. AND B. WHITAKER ET AL.

#### No. 3184.

1. **Survey in Action of Trespass to Try Title.**—Where from any reason testimony to the identity of the land in controversy is pertinent, it is competent to have a surveyor make survey of the premises, and to testify to the matter upon the trial. It is not necessary that the pleadings disclose the necessity, or that an order of survey be made. This does not apply when a report of a surveyor is offered in evidence.

2. **Description in Deed.** — A deed for all of a named block of land except five acres deeded to a named party is not void for uncertainty.

3. **Affidavit of Lost Deed by Attorney.**—An affidavit made by an attorney for plaintiffs that a deed "is not in possession of plaintiffs and they do not know where it is, and can not procure the same," is a sufficient predicate under the statute for the admission of a certified copy.

4. **Filing Deeds Before Trial.**—In bill of exceptions taken to the admission of a deed without proof and not filed in the papers for three days, it should be shown that the deed had not been so filed for three days.

5. **New Cause of Action—Limitation.**—In an action of trespass to try title an amendment correcting the description of the land and leaving out part of the land originally included in the suit is not a *new suit* as to that described in the amendment. Being included in the original suit limitation did not run until the filing of the amendment.

6. **Omission to Find Rents.**—Action of trespass to try title was tried by the judge without a jury. There was testimony to the value of the rents for the land recovered. The trial court made no finding on the subject. *Held*, on appeal it may be considered that the finding was the result of oversight, and the plaintiffs not having called the attention of the judge to the omission it will not be ground for relief on appeal.

APPEAL from Bowie. Tried below before Hon. J. L. SHEPPARD. The opinion states the case.

*F. M. Henry*, for appellant.—1. What matters may be considered in determining the boundary of land is a question of law to be decided by the court, and not to be sworn to as a fact by a witness. Rev. Stats., arts. 4800, 4801; Robinson v. Douthit, 64 Texas, 101; Ross v. Kornrumph, Id., 390.

2. When in trespass to try title the boundary lines of the survey of land sued for are not established so as to correspond with the descrip-

tion of the land contained in the petition, the plaintiffs fail in their action and the judgment should be for defendant. The proof must meet and conform to the allegations in plaintiffs' petition. The plaintiffs must recover if at all upon the case made. Jones v. Andrews, 62 Texas, 652; Nye v. Hawkins, 65 Texas, 600; George v. Thomas, 16 Texas, 74; Echols v. McKie, 60 Texas, 41; Ruge v. Shellworth, 64 Texas, 179; Butler v. Dunagan, 19 Texas, 566; 11 Texas, 234.

3. The plaintiffs must state the facts that give rise to a disputed boundary line between owners of adjoining land to authorize the court to establish and settle a disputed boundary. When the petition is silent as to adjoining tracts of land and sets up no facts as to a disputed boundary, the court should decide the case on the petition and answer without passing upon the title of the lands of the adjoining owners not embraced in the pleadings. The judgment of the court should conform to the case made. George v. Thomas, 16 Texas, 74; Nye v. Hawkins, 65 Texas, 600.

*H. C. Hynson,* for appellees, cited Haney v. Clark, 65 Texas, 93; Foote v. Silliman, 77 Texas, 268; Railway v. Goldberg, 68 Texas, 685.

HENRY, ASSOCIATE JUSTICE.—This was an action of trespass to try title, brought by the appellees to recover a fraction of a block of land situated near the city of Texarkana. The original petition was filed on the 8th day of September, 1885.

On the 28th day of September, 1886, plaintiffs filed an amended petition, in which the land sued for was described as follows:

"A part of block No. 1 of the T. B. Moores headright survey at or near the city of Texarkana, beginning at the south end of a division line between the five acres tract of defendant and the premises of plaintiffs, being a point 368.40 feet from the southeast corner of said block No. 1, on the south boundary line of said block No. 1; thence running west 127.5 feet; thence north 7 degrees east 636.42 feet; thence east 30 feet; thence south to the place of beginning; containing about one acre of land."

Subsequently the plaintiffs caused a survey of the land to be made, and on the 1st day of October, 1889, they filed a second amended petition, in which the land was described as follows:

"A part of block No. 1 of the T. B. Moores headright survey near the city of Texarkana, beginning at the south end of a division line between the five acres tract of the defendant and the premises of plaintiffs, being a point 369.14 feet west from the southeast corner of said block No. 1 on the south boundary line of said block; thence west 123.68 feet; thence north $6\frac{1}{4}$ degrees east 366 feet; thence north $21\frac{1}{2}$ degrees east 45 feet; thence north $82\frac{1}{2}$ degrees east 35 feet; thence east $32\frac{6}{10}$ feet to said

division line; thence south with the same 410.25 feet to the place of beginning; containing $\frac{94}{100}$ of an acre of land."

The defendant pleaded not guilty and the statute of limitations of three, five, and ten years. The cause was tried without a jury, and judgment for the land was rendered for plaintiffs.

It was agreed that C. W. Moores and McDonald and wife were the common source of title. The land was conveyed to one Nichols on the 8th day of February, 1876, and by Nichols to the defendant Henry on the 28th day of July, 1879. The land conveyed to each of said grantees was described in the deed to Nichols as follows: "Situated in the county of Bowie, State of Texas, and a portion of the Thomas B. Moores survey of 337 acres, near the town of Texarkana, beginning at the southeast corner of block No. 1; thence west with the south boundary line of said block —— varas, a stake; thence north to the right of way of the Texas & Pacific Railway; thence with said railway to the east boundary line of said block; thence south with the said east boundary line to the beginning, so as to contain five acres of land off of the east side of said block No. 1, and south of said railway."

The deed from Henry to Nichols contained substantially the same description of the land conveyed, except that a lot in the northwest corner was excluded from said deed. The plaintiffs held under a deed from Moores and McDonald and wife, dated the 10th day of April, 1884, in which the land conveyed was described as follows:

"All of block No. 1 except that part of block No. 1 heretofore deeded to the Texas & Pacific Railway Company for right of way purposes, except five acres of land out of said block No. 1, which five acres of land we do not include in this deed, now belonging to F. M. Henry. The part of block No. 1 which this deed is intended to convey is the western portion of said block No. 1, and is estimated to contain four acres."

Appellant contends that the court erred in permitting the surveyor who made a survey of the five acres of land conveyed to Nichols and of the land sued for by plaintiffs, to testify with regard to said surveys.

The objections made and now insisted upon are as follows:

1. The pleadings do not make any question as to the boundaries of the land in controversy.

2. There was no order of court authorizing said survey.

3. The pleadings show that said survey was unnecessary.

4. The issue of boundaries was one to be decided by the court, and not to be testified to by a witness.

We do not think that any of these objections should have prevailed. The length of the first line called for in the deed to Nichols was not specified, because it was intended for that line to be only long enough when considered with reference to the other calls in the deed to make an area of five acres. The quantity of land conveyed by that deed

must be limited to five acres, and the deed from Nichols to Henry was subject to the same limitation. The ascertainment of the boundaries of the five acres so as to designate their situation and also of the land subsequently conveyed to the vendors of plaintiffs were facts to be found by a survey. It was not necessary to procure an order of court for that purpose. It was an issue of fact which could properly be investigated and testified to by any competent witness, as any other fact could be. The objection made would only have been tenable if a report of the surveyor instead of his testimony had been introduced.

It is assigned as error that the court permitted to be read as evidence a certified copy of the deed from Moores and McDonald and wife to the Texarkana Lumber Company, over objections of the defendant, upon the following grounds:

1. That the deed was void for uncertainty on its face.

2. That it did not correspond with nor identify the land described in plaintiffs' petition.

3. That it does not describe the boundaries of the land conveyed, and appears to be incomplete.

4. Because it was not filed among the papers of the suit three days before the trial.

5. Because no affidavit was filed by plaintiffs stating that the original deed was lost, nor that they could not procure it.

6. Because the affidavit of the loss of the original deed was made by an attorney.

7. Because one of the plaintiffs was present and a witness at the trial and failed to make an affidavit of the loss of the deed, or that it could not be procured.

As we have stated before, the land conveyed by the deed is described as all of block No. 1 except the portion thereof previously deeded to the Texas & Pacific Railway Company and the five acres owned by F. M. Henry. The land so conveyed was capable of identification, and the objections urged to the deed must be held untenable.

An affidavit was made by the attorney of the plaintiffs that the deed "is not in the possession of the plaintiffs, and they do not know where it is and can not procure the same." This was sufficient to show that it was not in the power of the plaintiffs to produce the deed, and there is nothing suggested by the form of the affidavit, or otherwise, to indicate that the defendant was prejudiced by the failure of one of the plaintiffs to make an affidavit of the same facts. It is not shown by the bill of exceptions nor by any other part of the record that the copies of the deed admitted in evidence had not been on file among the papers of the cause for three days before the trial. If such was not the fact it should have been so stated in the bill of exceptions in addition to the objection made upon that ground. It is indicated on the margin of the record that the deed had been on file for more than three years.

Objection was made upon similar grounds to the introduction in evidence of the copy of the deed from the Texarkana Lumber Company to the plaintiffs, and which was also overruled by the court. We think the ruling was correct.

The evidence shows that Nichols inclosed by a fence the land in controversy with the five acres deeded to him, but he testified that he never claimed it, and so far as the plea of limitations depends upon his possession previous to the sale to Henry it is sufficient to say that the judgment of the court in favor of the plaintiffs on that issue is not without evidence to sustain it. As neither the defendant nor his vendor had a deed for the land in controversy, ten years is the only period of limitation that can be considered.

The defendant purchased from Nichols on the 28th day of July, 1879, and from that date he unquestionably held adverse possession of the land now in controversy; and if, as he contends, the land in controversy was first described in the second amended petition, which was not filed until the 1st day of October, 1889, and if that amendment may properly be held as setting up a new cause of action, the bar of the ten years statute was complete.

But, as we have said, plaintiffs on the 28th day of September, 1886, filed a first amended petition, in which, while the metes and bounds of the land sued for are materially different from those contained in their second and final amendment, they seem to us to embrace all of the land now in controversy, and to differ from the last pleading only by claiming the land in controversy as embraced in the larger body described. In other material particulars the description of the land is the same in all of the pleadings. If in the second amendment any land not embraced by the first one is included it has not been pointed out to us, and it is too minute for us to perceive it or to treat the variance as material. As the adverse possession of the defendant was interrupted by the filing of the first amended petition, the court correctly decided that plaintiffs' cause of action was not barred, even if it be admitted that the running of the statute was not affected by filing the original petition.

Plaintiffs alleged in their petition that the use and occupation of the land in controversy was of the value of $100 per annum, and one of them testified as a witness that it was worth that sum. The defendant testified that he had cultivated the land, and that its use was worth $3 or $4 per acre per annum.

The court omitted to mention the rent in the findings of fact or in the judgment. The plaintiffs filed no motion for a new trial, and failed to call the attention of the court to that issue in any manner. After the adjournment of the term they filed an assignment of error upon that ground, which they insist upon in this court, and ask us to render

judgment for the rent or to affirm it upon the issue of title, and reverse and remand upon the issue of rent.

The right of plaintiffs to have had judgment for some amount for rent is clear. The impression made upon the mind of the judge by the evidence may have been that the amount given should be small. We are constrained to conclude that the failure of the court to render judgment for some amount on that issue was the result of an oversight, and in that view it was the duty of plaintiffs to have called the attention of the court to the issue when the judgment was announced, or at least to have called attention to the omission during the term by some appropriate motion.

As nothing of the kind was done, we think that the issue should be treated as having been abandoned in the District Court by the plaintiffs rather than for us to reverse the judgment and remand the cause. In view of the wide conflict of the evidence as to the value of the rent, we can not undertake to render any judgment upon the issue.

The judgment is affirmed.

*Affirmed.*

Delivered October 30, 1891.

Motion for rehearing refused.