## SOUTHERN CASUALTY CO. v. VATTER.
### (No. 1277.)

(Court of Civil Appeals of Texas. Beaumont. July 10, 1925. Rehearing Denied Oct. 14, 1925.)

1. Appeal and error ⬅➡613(1)—Bills of exception merely stating grounds on which appellant objected to introduction of evidence not considered.

Bills of exception, merely stating grounds on which appellant's counsel objected to introduction of certain papers, and not containing affirmations or statements by court approving bills as to existence of such grounds, cannot be considered.

2. Master and servant ⬅➡405(6) — Evidence held to warrant judgment for $780 for permanent disability.

In suit to set aside compensation award, plaintiff's evidence as to extent of his injuries, confining him to hospital for 11 days, and permanently incapacitating him to work as longshoreman, at which he had received $6.40 a day, held to warrant judgment for $780.

Appeal from District Court, Jefferson County; J. D. Campbell, Judge.

Suit by J. W. Vatter against the Southern Casualty Company to set aside award of the Industrial Accident Board for plaintiff in unsatisfactory amount. Judgment for plaintiff, and defendant appeals. Affirmed.

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Howth, Adams & Hart, of Beaumont, for appellant.

Howell & Stephenson, of Beaumont, for appellee.

HIGHTOWER, C. J. This suit was filed by the appellee against appellant in one of the district courts of Jefferson county to set aside a final award of the Industrial Accident Board of Texas, made in appellee's favor, but appellee contended that the award was for too small an amount.

Appellant answered by a general demurrer and general denial. This is a sufficient statement of the pleadings, since no question of pleading is raised.

The facts may be stated substantially as follows:

Appellee was an employé of C. Flanagan & Sons, who was a subscriber under the terms of the Employers' Liability Act of this state (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), and appellant was the insurance company that carried the policy which covered the appellee.

Appellee was injured on March 5, 1924, while in the course of his employment, and appellant paid him compensation for a period of 11 weeks at the rate of $20 per week, but refused to pay him any more. Thereupon appellee filed his claim with the board, claiming total permanent disability, and on September 11, 1924, the board made its award, by which appellee was allowed compensation for a period of 17 weeks from March 12, 1924. Appellee was not satisfied with the award, and, as we hold, gave due and proper notice to all parties concerned that he would not abide by it, and on September 22d, 11 days after the award was made, filed this suit to set it aside.

Upon trial before the court without a jury judgment was rendered in favor of appellees for $780 in a lump sum, and appellant has duly prosecuted this appeal, and advances some 10 assignments of error, with as many propositions, for reversal.

[1] The first contention is, in substance, that the trial court was in error in admitting in evidence what purports to be a written acceptance by appellant's general agent, R. A. Morris, in the city of Beaumont, of a written notice given him as such agent by one of the attorneys for appellee that appellee would not abide by the award of the board, and that he would in due time file suit to set it aside. This acceptance of notice was dated September 16, 1924, just 6 days after the board made its award, and purports to have been signed by R. A. Morris in his capacity as general agent for appellant. The bill in this connection states that appellant objected to the introduction in evidence of this purported acceptance of notice, "because" there was nothing in evidence to show that R. A. Morris was appellant's agent, and "because" there was nothing in evidence to show that Morris signed the purported acceptance of notice. The trial court allowed the bill, but it is clear that the bill does not state, as a fact, that there was no evidence in the record that Mr. Morris was appellant's agent, nor does the bill state as a fact that there was nothing in the evidence to show that Mr. Morris signed the acceptance of notice. The bill simply shows the grounds upon which counsel for appellant objected to the introduction of this paper. There is quite a difference between a statement of appellant's grounds of objection and a statement of a fact by the court as to the existence of such grounds.

The first five propositions presented by counsel for appellant in their brief are based upon bills of exception like this, and we dispose of them all in like manner. And the tenth proposition is based upon an assignment that the trial court was in error in permitting the introduction in evidence of what purported to be a written notice served by the sheriff of Travis county, Tex., upon the secretary of the Industrial Accident Board that appellee would not be bound by that board's award, and that he would file suit within due time to set it aside. Appellant's objection to this purported service by the sheriff was because there was nothing in evidence to show that the man who signed this instrument was, in fact, the sheriff of Travis county, Tex., or that, if he was, there was nothing in evidence to show that he, in fact, served and signed this instrument. This bill of exception, like the first five, does not disclose any error, and, as we stated in disposing of the first proposition, the bill in this connection simply states that the testimony objected to was objected to on certain grounds. It was not an affirmation or statement of fact by the court approving the bill that the claimed grounds, in fact, existed. Rankin v. Rankin (Tex. Civ. App.) 134 S. W. 392; Ward v. Cameron, 97 Tex. 472, 80 S. W. 69; Terrell v. McCown, 91 Tex. 241, 43 S. W. 2; Whitaker v. Gee, 61 Tex. 218; Henry v. Whitaker, 82 Tex. 8, 17 S. W. 509; Hurd v. Brewing (Tex. Civ. App.) 51 S. W. 885; Wright v. State, 36 Tex. Cr. R. 35, 35 S. W. 287; Norsworthy v. State (Tex. Cr. App.) 77 S. W. 805.

[2] By the sixth, seventh, eighth, and ninth propositions counsel for appellant make the contention that the amount awarded the appellee was grossly excessive, contending as they do that appellee was paid in full for all injuries that were sustained by him. As we have stated above, he was compensated by appellant for a period of 11 weeks at the rate of $20 per week, which was the proper rate, and at the end of that period appellant declined to pay appellee any further compensation, claiming that he had wholly recovered from his injuries. As bearing upon these several propositions, we will state in a general way what the testimony was.

Appellee testified, in substance, that he was working on one of the wharfs in the city of

Beaumont, handling cross-ties that were to be loaded upon a ship or vessel by Flanagan & Sons, who were contracting stevedores; that appellee was a longshoreman, and he and one other man were taking down the cross-ties by stacks; and that then another crew would fasten a winch to a pile of 9 or 10 of these ties, and hoist them up five or six feet, and swing them around from the wharf to the vessel that was being loaded; that on the occasion of his injury, when this winch had picked up a bunch of 9 or 10 cross-ties and had hoisted them about five or six feet above appellee, who was in a stooping posture, something happened, and the pile of ties that was being hoisted by the winch struck appellee in the left side and back, and knocked him to the floor of the wharf, where he was working, and rendered him unconscious; that he was confined in the hospital because of his injuries until the 16th of March following, 11 days, and that he suffered a great deal of pain in consequence of the injuries; that two of his ribs in his left side were broken; and that his lungs were injured, and he was caused to spit up blood for some 6 weeks after the injuries; and that up to the time of the trial which was in November, 1924, he was still suffering from the injuries so sustained. Appellee further testified that before he was injured he was a well and strong man, and was capable of doing hard manual labor, but that since the injuries he was unable to do any character of manual labor that required any considerable strength; that he could do no labor that required him to stoop over; and that he was wholly incapacitated to follow the occupation of longshoreman that he had followed for 12 years up to the time of his injuries. He was earning, as the undisputed proof shows, $6.40 a day as longshoreman at the time he was injured, but he had not been able to follow that business or any other hard labor since his injuries.

Another witness, who was present at the time appellee was injured, stated, in substance, that he saw appellee at the time he was struck by the ties, and that he was knocked down and was rendered unconscious, and that he had not recovered consciousness at the last time witness saw him and before he was removed to the hospital. The undisputed proof was that appellee was in the hospital 11 days, but some of the witnesses for appellant say that the reason of such long confinement in the hospital was that appellee contracted a disease known as influenza, and that but for the disease he would not have remained in the hospital any such length of time, and that the disease had no connection with the injuries. Dr. Barr, however, who testified as a witness for appellant, stated, if we remember his evidence in the record, that appellee did not contract influenza until he had been in the hospital about two weeks.

Another witness for appellee, Dr. Bailey, stated, in substance, that he examined appellee about August 23d, following his injuries, and that he found that two of his ribs on his left side had been fractured, and that he discovered during his examination that appellee seemed to be very tender in the vicinity of these broken ribs, and would flinch from his efforts to ascertain the extent of the fractures. He further testified that appellee complained to him of spitting up blood from his lungs, but that he did not, in fact, see appellee spitting up blood, but did state that appellee had a cough at the time he examined him. This doctor was unable to state positively whether the condition of appellee's lungs, as complained of by him, was occasioned by the injuries. He did state that it would be possible and probable, if the fractured ribs came in contact with the lungs, the spitting of blood would result and a cough would follow.

The landlady where appellee boarded at the time of his injuries, and where he had boarded for more than one year prior to that time, testified as a witness in the case, and stated, in substance, that appellee was a well and hearty man to all appearances before he was injured, but that he had been otherwise for quite a period of time since his injuries; that he was brought to her boarding house from the hospital, and was confined in his bed there for approximately one month after leaving the hospital on account of his injuries; that he spat up blood regularly for some time after he came out of the hospital, and seemed to be at times in much pain. There was, in substance, the testimony of appellee touching the extent of his injuries.

Three physicians testified in behalf of appellant. These were Dr. Ledbetter, Dr. Mann, and Dr. Barr. The substance of Dr. Ledbetter's evidence was that on the day after appellee was injured he made an X-ray examination of his lungs and ribs, with a view of ascertaining the extent of his injuries. He made X-ray pictures of these parts, and he testified that these pictures showed no injuries to the lungs, but did show that two of the ribs of appellee's left side were fractured. He stated, in substance, that in his opinion as a physician appellee ought to have recovered from the injuries that he found within one month or 6 weeks, and that in his opinion appellee did recover from such injuries within 2 or 3 months at the most. He again examined appellee in July following his injuries in March, and stated that at that time he considered appellee entirely well, and in a normal condition, and that he was able to perform the duties of longshoreman as he had theretofore done, and that appellee was a malingerer at that time.

Dr. Mann testified that he, in company with Dr. Barr, examined appellee some 2 or 3 months after he was injured, and stated that two of appellee's ribs had been fractured, but that they were healed at the time he exam-

ined appellee, and that appellee had then wholly recovered from such injuries; that he discovered nothing wrong with appellee's lungs, and stated also that in his opinion appellee was a malingerer.

Dr. Barr testified, in substance, that he examined appellee some 3 or 4 months after his claimed injuries, and that, while he found that two of his ribs had been fractured, it was his opinion that appellee had wholly recovered from such injuries at the time he examined him, and that in his opinion appellee was a malingerer.

This is the state of the testimony of both sides. The trial court, sitting as the trier of the facts in this case, if he believed the testimony of the appellee and that of the landlady, to say nothing about Dr. Bailey's testimony, would have been warranted in concluding that appellee's injuries were more serious by far than was concluded by appellant's physicians. The extent of his injuries was peculiarly a question of fact for the trial court, and we would not be warranted in saying that he should have disbelieved appellee and his witnesses and given credence only to appellant's doctors.

This disposes of all questions in the case, and the judgment is affirmed.